UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RICHARD ROUSSELL (#596594)					CIVIL ACTION

VERSUS

BURL CAIN, ET AL.						NO. 15-93-BAJ-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 25, 2016.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RICHARD ROUSSELL (#596594)                          CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                    NO. 15-93-BAJ-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (R. Doc. 9). The motion is opposed. (R. Doc. 12).

The *pro se* plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), against Warden Burl Cain and Assistant Warden Kevin Benjamin, complaining that his constitutional rights have been violated due to the failure of the Department of Corrections to modify two doors used by the plaintiff that are not wheelchair accessible.[1]  The plaintiff seeks punitive and compensatory damages.

The defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's § 1983 claims against them in their official capacities.  In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71

---

[1] The allegations of the plaintiff's Complaint also assert potential claims pertaining to deliberate indifference to his serious medical needs and access to the courts; however, it appears that the plaintiff has abandoned any such potential claims. *See* R. Docs. 12 and 13, wherein the plaintiff makes clear that his suit pertains strictly to violations of the ADA and unconstitutional conditions of confinement.

(1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's § 1983 claims asserted against defendants their official capacities for monetary damages are subject to dismissal. In contrast, the plaintiff's § 1983 claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's ADA claims against the defendants in their official capacity also remain viable.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that,

"where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges the following. On December 19, 2013, the plaintiff was on a call out to attend a class in the "A" building. The plaintiff has only one leg and uses a wheelchair. He was required to go through two doors to attend the class, but neither door was wide enough for him go through while in his wheelchair. With the assistance of an orderly to fold up his wheelchair and pass it through the doorway, the plaintiff stood up on one leg, hopped through the first door, and then sat back down in his wheelchair. The process was repeated upon reaching the second door, but the plaintiff's leg gave out causing him to fall and injure his back, right hip, and right ankle.

The plaintiff was assisted into his wheelchair and taken to the prison hospital through a doorway used by visitors which had been previously widened. X-rays revealed no broken bones.

Despite his complaints of pain, an MRI was not done and the plaintiff was not provided with any additional pain medication.

The plaintiff filed an ARP dated January 8, 2014 to which he has never received a Second Step Response, but the doorways in question were widened in June of 2014. The plaintiff was called to the "A" building to make sure his wheelchair could fit through the newly widened doorways.

In response to the plaintiff's allegations, the defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's federal constitutional or statutory rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis of the plaintiff's § 1983 claims, the Court finds that the defendants' motion should be granted. Specifically, the Court concludes that the

plaintiff has failed to allege sufficient personal involvement on the part of either defendant in any violation of the plaintiff's constitutional rights.

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983). Any allegation that the defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or respondeat superior is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

The plaintiff's Complaint is completely devoid of any allegations pertaining to Warden Cain and Assistant Warden Benjamin. Accordingly, the Court finds that the plaintiff has failed to allege sufficient personal involvement by either defendant in any violation of the plaintiff's constitutional rights. It is recommended that the defendants' Motion be granted as to the plaintiff's § 1983 claims of deliberate indifference to his serious medical needs and access to the

courts, to the extent the plaintiff is asserting such claims,[2] and that he was subjected to unconstitutional conditions of confinement.

With regards to the plaintiff's ADA claim, to whatever extent, if any, that the defendants are being sued in their individual capacities, the plaintiff's ADA claims against them must be dismissed.  The Supreme Court in *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209–10 (1998), recognized that state prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities.  The term "public entity" in Title II does not include individuals; therefore, individual defendants cannot be held personally liable for violations of Title II of the ADA.  *Walker v. Snyder*, 213 F.3d 344, 347 (7th Cir. 2000), *abrogated on other grounds by Bd. of Trustees v. Garrett*, 531 U.S. 356, 374 n. 9 (2001), *as stated in Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

---

[2] As previously noted, the plaintiff's complaint potentially states claims for deliberate indifference to his serious medical needs and access to the courts, but it appears that the plaintiff has abandoned any such potential claims. *See* R. Docs. 12 and 13, wherein the plaintiff makes clear that his suit pertains strictly to violations of the ADA and unconstitutional conditions of confinement.  Even if the plaintiff had pleaded specific allegations of personal involvement on the part of these defendants, a substantive review of these claims would fare no better.  The Court notes that the plaintiff was provided with prompt medical treatment after the incident.  To the extent the plaintiff disagrees with the treatment provided, a prisoner who disagrees with the course of treatment or alleges that he should have received further treatment does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justic*e, 239 F.3d 752, 756 (5th Cir. 2001).  In order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that he has suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996).  The plaintiff does not have a constitutional due process right to the proper handling or resolution of his administrative grievances. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).  Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989).  Finally, the plaintiff has not alleged any injury resulting from the complained of act, and no injury could have resulted from the delay since applicable regulations provide that, upon the failure of prison officials to provide a timely response at any stage of an inmate's administrative proceedings, the inmate may unilaterally proceed to the next step in the process.  22 La. ADC, Part I, § 325(J)(1)(c).  Any delay in responding to the plaintiff's administrative grievance had no detrimental effect on the plaintiff's access to the courts.

Finally, as to any official capacity claims the plaintiff may be asserting against the defendants under the ADA, the Court finds that the plaintiff has failed to allege facts that state a cause of action under this statute. "The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "public entity" to include "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1)(B), and it has been held that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'" *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Thus, "the plain text of Title II of the ADA unambiguously extends to state prison inmates." *Id.* at 213.

Notwithstanding, punitive damages may not be awarded in private suits brought under the ADA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), and "[a] plaintiff asserting a private cause of action for violation of the ADA ... may only recover compensatory damages upon a showing of intentional discrimination." *Delano- Pyle v. Victoria County, Texas, supra*, 302 F.3d at 574. Accordingly, the plaintiff is not entitled to the punitive damages requested in his Complaint.

In order to establish a violation of the ADA, the plaintiff must be able to demonstrate (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the

defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

The plaintiff's allegations in the instant case do not meet this 3-part test *vis-a-vis* the defendants.  The plaintiff does not assert that he was excluded from participation in or denied the benefits of any prison services, programs or activities.  The plaintiff does not allege that he is being discriminated against in any manner, much less by reason of his disability.  To the contrary, the plaintiff alleges in his Complaint and the Request for Accommodation form (R. Doc. 1-1, p. 4) attached thereto that he receives visits from family once or twice per month, and attends church services and banquets with the assistance of a wheelchair and inmate orderlies.  The plaintiff's allegations merely establish that he disagrees with the accommodations provided to him at the time in question,[3] although such accommodations have been deemed by the United States Supreme Court to comply with Title II.  *See Tennessee v. Lane,* 541 U.S. 509, 531, (2004) (stating that, for older facilities, "a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services.").  Accordingly, the Court recommends that the defendants' Motion be granted as to the plaintiff's ADA claim, dismissing the claim, with prejudice, for failure to state a claim upon which relief can be granted.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel

---

[3] The plaintiff alleges that the doors in questioned were widened in June of 2014 after the plaintiff filed an ARP in January of 2014. *See* R. Doc. 1.

or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367.  In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the defendants' Motion to Dismiss (R. Doc. 9) be granted, dismissing the plaintiff's claims against the defendants with prejudice.  It is further recommended that supplemental jurisdiction over the plaintiff's state law claims be declined.

Signed in Baton Rouge, Louisiana, on January 25, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**